UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE SUBPOENA TO RESPONDENT MARK A. FORKNER and DARREN JENS, | ) ) ) ) ) ) ) ) ) | No. 25 CV 8015[1] No. 25 CV 8280  Magistrate Judge Young B. Kim  October 31, 2025 |

**MEMORANDUM OPINION and ORDER**

Public Employees' Retirement System of Mississippi ("Lead Plaintiff") and others filed a putative class action on behalf of Boeing shareholders for securities fraud under Section 10(b) of the Securities Exchange Act, which is currently pending before this court in *Seeks v. The Boeing Company, et al.*, No. 19 CV 2394 (N.D. Ill.). Plaintiffs in *Seeks* allege Boeing's former President and CEO, Dennis Muilenburg, and its former CFO, Gregory Smith (together, "Defendants") made false public statements in response to two 373 MAX plane crashes in 2018 and 2019, artificially inflating Boeing's stock price and injuring the putative class members. Plaintiffs in *Seeks* issued subpoenas for depositions, including those of former Boeing employees Mark A. Forkner and Darren Jens.

---

[1] In similar situations, the parties' attorneys may benefit from filing motions to quash subpoenas in the underlying action when the subpoena respondents agree to the jurisdiction of the court presiding over the action. This approach eliminates the need for multiple cases pending on the docket. There is no downside to at least seeking leave of court to adjudicate subpoena issues in the underlying case for the sake of efficiency, citing Rule 1 for support.

Before the court are Forkner's and Jens's motions to quash their subpoenas. (Forkner's Mot. to Quash Subpoena, No. 25 CV 8015, R. 9 ("Forkner Mot.")); Darren Jens's Mot. to Quash Subpoena, No. 25 CV 8280, R. 1 ("Jens Mot.").) The parties filed much of the briefing on these motions under seal because they include confidential information. Given the strong preference for transparency and public access to court records—especially in a putative class action case that may concern members of the public not yet involved in the litigation—this court endeavors to avoid sealing orders whenever possible. Accordingly, this order includes only non-specific references to information that could be considered confidential, including facts or exhibits filed under seal. For the following reasons, the motions are denied:

## Background

Forkner was Boeing's Chief Technical Pilot for the 737 MAX through 2018 when he left the company. (Forkner Mot. at 2; No. 25 CV 8015, R. 19 ("Pl.'s Forkner Opp.") at 4.) Forkner's responsibilities in that position included providing information to the FAA's Aircraft Evaluation Group ("AEG"), (Pl.'s Forkner Opp. at 4), which "coordinates with aircraft manufacturers, operators, Aircraft Certification Offices, and other Flight Standards Offices with product-specific Continued Operational Safety (COS) issues," FAA, Aircraft Evaluation Division, https://www.faa.gov/about/office_org/headquarters_offices/avs/offices/afx/afs/afs100 (last visited October 23, 2025). Specific to this case, the AEG used information Forkner provided to determine the level of "differences training" it required for pilots certified to fly the previous generation of 737 planes to become certified to fly the 737

2

MAX. (Pl.'s Forkner Opp. at 4.) The greater the level of training required, the higher the cost to Boeing when launching its 737 MAX planes. The government indicted Forkner for withholding information about a modification to the 737 MAX's Maneuvering Characteristics Augmentation System ("MCAS") from the FAA during this process, but a jury acquitted him of the criminal charges. (Forkner Mot. at 4.) As for Jens, he worked as an aircraft engineer at Boeing starting from about 1986 until he retired in 2020. (Jens Mot. at 2.) Part of Jens's responsibilities from 2012 through 2016 included studying, developing, and designing software systems, including MCAS. (Id.; No. 25 CV 8280, R. 20 ("Pl.'s Jens Opp.") at 3.)

After the 2018 and 2019 crashes, Boeing and several of its executives, including Defendants, "continued to affirm their confidence in the aircraft's fundamental safety and in the integrity of the FAA approval process." *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2022 WL 3595058, at *3-4 (N.D. Ill. Aug. 23, 2022). Those statements are at the heart of the underlying securities litigation. Neither Forkner nor Jens made any public statements affirming their confidence in the safety of the 737 MAX.

## Legal Standard

Courts must quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). The party moving to quash the subpoena bears the burden of "establish[ing] the impropriety of the subpoena." *Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 CV 5757, 2023 WL 2974083, at *1 (N.D. Ill. April 17, 2023). "[N]on-party status' is a significant factor to

3

be considered in determining whether the burden imposed by a subpoena is undue." *Little v. JB Pritzker for Governor*, No. 18 CV 6954, 2020 WL 1939358, at *2 (N.D. Ill. April 22, 2020) (quoting *U.S. ex rel. Tyson v. Amerigroup Ill., Inc.*, No. 02 CV 6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005)). Treating nonparties differently is justified because while "discovery is by definition invasive [and] parties must accept its travails," nonparties have no "horse in the race" and, as such, "have a different set of expectations" as to what is demanded of them. *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 CV 1853, 2017 WL 1233047, at *3 (N.D. Ill. April 4, 2017).

However, nonparty status is not the only factor courts consider when assessing a subpoena recipient's burden. Courts also consider whether the information requested is relevant, whether the party requesting the information has a substantial need for it, and the breadth of the request. *See Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 CV 408, 2013 WL 1883204, at *2 (N.D. Ill. May 6, 2013); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013). In short, the law "does not seek to absolve nonparties from any burden," *Papst Licensing GmbH & Co.*, 2017 WL 1233047, at *4, but dictates that discovery from nonparties through subpoenas has limitations, *see Parker*, 291 F.R.D. at 188.

Relevance is the primary limitation on nonparty discovery through subpoenas. Under Rule 45, the scope of a subpoena to a nonparty "is as broad as what is otherwise permitted" under Rule 26(b)(1), *Powell v. UHG 1 LLC*, No. 23 CV 6389, 2024 WL 4286960, at *2 (N.D. Ill. Sept. 25, 2024) (internal quotations and citation omitted), which states "[p]arties may obtain discovery regarding any nonprivileged matter that

4

is relevant to any party's claim or defense and proportional to the needs of the case." Relevance for purposes of discovery is a low bar to meet. "Because the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly," *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)), and information "need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1).

But Rule 26 also directs courts to ensure that discovery is proportional. When assessing proportionality, the court may consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879, 2021 WL 3022324, at *2 (N.D. Ill. July 16, 2021) (quoting *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 365 F. Supp. 3d 916, 924-25 (N.D. Ill. 2019)).

## Analysis

**A.   Mark Forkner**

Forkner offers several bases upon which to quash his subpoena. He argues that his presumed testimony is irrelevant to the underlying lawsuit and sitting for a deposition would be unduly burdensome. He also complains that the information he expects Lead Plaintiff to seek from his deposition is available from other sources. Lastly, he argues that his deposition would waste the parties' time because he

anticipates invoking his Fifth Amendment right against self-incrimination. His arguments lack merit.

Forkner's deposition may yield relevant information. Forkner argues his testimony cannot be relevant because he played no role in Defendants' public statements that are at the center of this litigation. But Forkner played a key role in events that were a subject of the critical statements at issue. While he contends that Lead Plaintiff "does not—and cannot—show how Mr. Forkner's work with the FAA has any relevance to the . . . CEO's statements regarding Boeing's commitment to safety," (No. 25 CV 8015, R. 25 ("Forkner Reply") at 8), Forkner's communications suggest otherwise.

It is undisputed that Forkner's role involved coordinating with the AEG as it assessed the training required for pilots of the previous generation of 737 to safely operate the 737 MAX. (Pl.'s Forkner Opp. at 4.) Forkner attempts to distinguish Lead Plaintiff's cited authority *DeLeon-Reyes v. Guevara*, No. 18 CV 1028, 2021 WL 3109662 (N.D. Ill. July 22, 2021), on the basis that the subpoena recipient there was "personally involved" in that plaintiff's postconviction proceedings, meaning the recipient's testimony was likely relevant to the plaintiff's claim of innocence. (Forkner Reply at 4 n.1). This ignores similarities to the case here, where Forkner's role gave him access to information and perspective on Boeing's commitment to safety regarding this process—part of the subject of Defendants' later statements. Forkner's communications, including those published by *The New York Times*, suggest his perspective may be at odds with Defendants' public statements. (See generally, Pl.'s

Forkner Opp., Ex. 11.) Indeed, Forkner seems to concede this point, acknowledging that this anticipated testimony could be "marginal[ly] relevan[t]." (Forkner Mot. at 7.) Marginal or not, relevant evidence is discoverable.

Regardless, Forkner says any relevant evidence that may be secured through his testimony can appropriately be "obtained through other less burdensome means," (id. (citing *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015))), such as the admissions in Boeing's Deferred Prosecution Agreement ("DPA"), documents produced in discovery, or deposition testimony from Boeing employees who were directly "involved in the alleged public misstatements," (Forkner Mot. at 10-11). The court disagrees and finds that Forkner likely has a unique perspective on information related to the process in which he was involved.

Indeed, Forkner acknowledges he had a "complete lack of involvement" in the "underlying admissions by Boeing in the DPA" (id. at 11) and further contested his criminal indictment that "[l]argely mirror[ed]" the DPA, (id. (citing DPA, Stmt. of Facts, *United States v. Boeing*, No. 4:21-cr-00005-O, Dkt. 4 (N.D. Tex. Jan. 7, 2021)). His disagreements with DPA admissions coupled with his role at Boeing as Chief Technical Pilot and documents attached to the Lead Plaintiff's response strongly suggest that Forkner has at least some unique knowledge about events that were the subject of Defendants' public statements. In other words, Forkner's deposition testimony may reveal relevant information beyond what exists in the DPA, existing records, and other witness testimony.

Forkner further argues that having to sit for a deposition would subject him to undue burden because he is a nonparty who left Boeing in 2018, before Defendants made any of the allegedly misleading statements. (See Forkner Mot. at 6-8.) He adds that his deposition would interfere with his current job, which has an "extremely demanding travel schedule," (id. at 7), and he was already subject to a criminal trial on related issues where the jury found him not guilty, (id. at 4). But as discussed, while Forkner's nonparty status is a significant factor in determining whether his deposition would cause an undue burden, it is not dispositive. *See Parker*, 291 F.R.D. at 188. As Forkner acknowledges, the court must also assess the relevance of the discovery sought, whether Forkner made a showing that the deposition would in fact burden him, and Lead Plaintiff's need for the evidence. (See Forkner Mot. at 6 (citing *Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 CV 8816, 2021 WL 4935162, at *2 (N.D. Ill. June 10, 2021).) Forkner's burden "must be shown by 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Papst Licensing GmbH & Co.*, 2017 WL 1233047, at *3 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

Here, Forkner points to his new job's "extremely demanding travel schedule," (Forkner Mot. at 7), and his past criminal trial on related issues, (Forkner Reply at 9). First, while the court appreciates that sitting for a deposition is inconvenient, "[e]ffort of some sort is an inherent part of life" and legal proceedings, even for nonparties. *See Papst Licensing GmbH & Co.,* 2017 WL 1233047, at *4. Moreover, Lead Plaintiff has already expressed willingness to confer with Forkner to "attempt to accommodate

8

his travel schedule," so that any inconvenience can be minimized. (Pl.'s Forkner Opp. at 11 n.8.) As a result, Forkner's travel schedule, even if it requires some effort to work around, does not render his deposition unduly burdensome.

Second, Forkner's past criminal trial has no bearing on the issue of "undue burden." That trial is over. There are no scheduling conflicts or required appearances there that would prevent Forkner's attendance at the deposition requested here. Forkner's argument suggests that re-treading events like those that were the subject of his own trial would impose a stressful or mental burden. But "vague and unsupported claims regarding the stress of responding to a subpoena are not sufficient" to establish an undue burden. *See Reed v. Illinois*, 318 F.R.D. 77, 81 (N.D. Ill. 2016). Indeed, courts have rejected "better supported" and "more concrete" arguments regarding stress-related burdens than the one Forkner suggests may exist here. *See id.* (citing *Arassi v. Weber Stephen Prods. LLC*, No. 13 CV 684, 2014 WL 1385336, at *2 (E.D. Wis. April 9, 2014) (denying motion to quash subpoena for deposition of two children undergoing mental health treatment as a result of their father's accident); *Englar v. 41B Dist. Court*, No. 04 CV 73977, 2009 WL 3497801, at *6 (E.D. Mich. Oct. 29, 2009) (denying motion to quash subpoena despite letter from doctor regarding the ill effect of stress on the respondent); *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 257 (D. Kan. 1996) ("Bald assertions of emotional and financial stress, moreover, do not suffice.").)

Furthermore, while Forkner points out that the record from his criminal trial is available to the parties, he did not testify at that trial. (Forkner Mot. at 4.) In

determining whether to quash a subpoena, courts also assess whether "the party requesting the information has a substantial need" for the evidence. *See Am. Soc. of Media Photographers, Inc.*, 2013 WL 1883204, at *2. Because Forkner did not testify at his criminal trial, Lead Plaintiff must depose Forkner to access his testimony here. Each of these factors demonstrate that Forkner has not made the requisite showing of undue burden. *See Papst Licensing GmbH & Co.*, 2017 WL 1233047, at *4. Accordingly, the court declines to quash the subpoena on this basis.

Forkner also asserts that he anticipates invoking his Fifth Amendment right against self-incrimination should the deposition proceed and therefore any deposition would be a waste of time. (Forkner Mot. at 2.) Forkner is correct that a deponent may invoke his Fifth Amendment right in a civil matter "where [his] answers might incriminate him in future criminal proceedings," *see LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389 (7th Cir. 1995), and the "right to assert the privilege does not depend on the likelihood, but upon the possibility of prosecution," (Forkner Mot. at 11-12 (quoting *People of State of Ill. ex rel. Hartigan v. Urbano*, No. 85 CV 6854, 1986 WL 13779, at *1 (N.D. Ill. Nov. 28, 1986)). But an intent to assert the privilege does not allow a respondent to avoid a deposition altogether, *see Johnson v. City of Chi.*, No. 19 CV 3904, 2021 WL 1952489, at *1 (N.D. Ill. May 10, 2021). Forkner may be concerned about having to invoke the privilege, from which an adverse inference may be drawn in a future criminal proceeding. *See id.* at *2-3. Even so, "courts routinely require witnesses to sit in the witness chair, and make the tough decision about whether to assert" it. *Id.* at *2; *see also United States v. $110,000 in United*

10

*States Currency*, No. 21 CV 981, 2021 WL 2376019, at *6 (N.D. Ill. June 10, 2021) (holding that a deponent's anticipated invocation of the Fifth Amendment in response to a requesting party's questions "does not obviate his responsibility to sit for a properly subpoenaed deposition."). In short, Forkner's prediction that his deposition will be a waste of time is irrelevant to the determination at issue and in any case remains to be seen.

Moreover, Lead Plaintiff needs to make the record that Forkner refused to answer questions during his deposition to tee up the next issue of whether he should be compelled to testify. It remains unclear whether a possibility of prosecution exists in Forkner's case given that he was already prosecuted and acquitted. The Fifth Amendment's Double Jeopardy Clause protects parties against being prosecuted for the same crime twice. *See, e.g., Ashe v. Swenson*, 397 U.S. 436, 446-47 (1970). And the statute of limitations for whatever crimes Forkner could stand accused of may have already expired. The court need not—and cannot—fully address this issue because it was not fully briefed or factually developed in the record, but the facts as presented raise a question whether there is a genuine "possibility of prosecution." In any event, quashing the subpoena on this basis is not warranted.

**B.   Darren Jens**

Jens's arguments for quashing his subpoena substantially mirror Forkner's, in that Jens says his anticipated testimony is irrelevant and his nonparty status renders the subpoena unduly burdensome. His arguments are equally unavailing. Given the low bar to establish relevance, Jens's deposition may produce relevant information.

11

It is true that Jens played no role in Defendants' public statements, which Lead Plaintiff must prove were made "intentionally or recklessly with an intent to deceive investors." (Jens Mot. at 5-6 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011).) But just because Jens cannot testify directly to Defendants' state of mind does not mean his anticipated testimony is useless. Indeed, as Lead Plaintiff points out, part of establishing scienter necessarily involves showing that material statements—including claims that the 737 MAX was "as safe as any airplane that has ever flown the skies"—were false and misleading. (Pl.'s Jens Opp. at 6 (quoting *Seeks v. Boeing Co.*, 752 F. Supp. 3d 992, 1015 (N.D. Ill. 2024)).) Because Jens was personally involved in designing a safety system for the 737 MAX, his testimony could easily have "any tendency" to make this fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)-(b). The record, some of which is under seal, suggests that Jens may have unique information or a unique perspective on issues related to the safety of MCAS's design—one of the subjects of Defendants' alleged misrepresentations.

Indeed, a federal court overseeing a different case related to the 737 MAX recently granted a motion compelling Jens's deposition over similar objections. *See Polskie Linie Lotnicze LOT S.A. v. Boeing Co.*, No. C21-1449RSM, 2025 WL 1645172, at *1-2 (W.D. Wash. May 23, 2025) (finding Jens's anticipated testimony relevant where Jens was "personally involved in and has personal knowledge of" issues relevant to the case, including MCAS). Jens argues that case is distinct from *Seeks* because the warranty claims there implicate "issues of airplane design in which

12

Mr. Jens was personally involved." (No. 25 CV 8280, R. 24 ("Jens Reply") at 5.) Although there is no warranty claim here, the court still finds that the subpoena seeks relevant information because the safety of the 737 MAX's design is at the core of Defendants' alleged misrepresentations.

Turning next to Jens's argument that he will face an undue burden because of his nonparty status, he cites a decision and points to a warning by the court cautioning parties to avoid burdening nonparties. (Jens Mot. at 7-8 (citing *Bilek v. Nat'l Cong. of Emps., Inc.*, No. 18 CV 3083, 2020 WL 10963975, at *4 (N.D. Ill. May 21, 2020)).) But both the *Bilek* court's and this court's admonitions relate to requests for documents from parties before nonparties when possible. (Id. at 7 (citing *Bilek*, 2020 WL 10963975, at *4 (noting the subpoenas there sought "to obtain from third parties information and documents [the parties] should have produced themselves"); R. 2, Jens Mot., Ex. D, Dec. 18, 2024 Hr'g Tr. at 3 ("[B]usiness records should be requested of the party litigants first.").) This distinction is meaningful because while a specific document may be identical whether a party or a nonparty produces it, testimony from nonparties may offer unique facts and observations that the parties themselves cannot provide.

In any event, simply "inton[ing] the phrase" of undue burden and noting one's nonparty status does not automatically make a burden undue. *See Papst Licensing GmbH & Co.*, 2017 WL 1233047, at *3. That burden "must instead be shown by 'a particular and specific demonstration of fact,'" instead of "conclusory statements." *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)). While Jens

13

acknowledges that nonparty status is only "a factor entitled to special weight in evaluating the balance of competing needs," (Jens Reply at 6 (quoting *Uppal*, 124 F. Supp. 3d at 813)), he fails to demonstrate his anticipated burden through "evidentiary proof" as required, *Papst Licensing GmbH & Co.*, 2017 WL 1233047, at *3.

Jens instead focuses on his proportionality concerns. (See Jens Mot. at 7-8.) Jens takes issue with the "breadth" of the request—unlike the court, which sees no issues because Lead Plaintiff seeks relevant testimony—and suggests his anticipated testimony would be cumulative of other witness testimony regarding the development and design of MCAS. (Id.) Lead Plaintiff has deposed or will depose multiple former and current employees who also have knowledge about MCAS and the 737 MAX, including several former Chief Engineers and vice presidents—roles that Jens never held. (See id.) Because of their roles, Jens suggests the anticipated deponents are better positioned to provide testimony on MCAS. (Jens Reply at 7.) Boeing also produced at least 23 deposition transcripts from past legal matters involving MCAS and the 737 MAX. (Id.) Such evidence, Jens says, undercuts Lead Plaintiff's "vague assertion that 'only Mr. Jens can provide the reasons for his concerns,'" particularly considering the "non-existent probative value" of his anticipated testimony. (Id. at 8 (citing Pl.'s Jens Opp. at 8).)

As discussed, Jens's anticipated testimony is relevant—and it is not duplicative. Jens may have unique insight, experience, or perspectives on the 737 MAX's engineering systems, including MCAS, that Chief Engineers or vice presidents do not. Furthermore, to the extent he acknowledges that Lead Plaintiff asserts Jens

had expressed "concerns" about MCAS, it is difficult to imagine anyone other than Jens who is qualified to speak about such concerns, regardless of title or experience. In a similar vein, while Jens notes the availability of other deposition testimony from past proceedings, it is unclear from the record how many, if any, of the 23 existing deposition transcripts address these issues. The Washington court analyzed similar issues related to Jens's prospective deposition and made a similar observation. *See Polskie Linie Lotnicze LOT S.A.*, 2025 WL 1645172, at *2 (noting plaintiff was "not required to anticipate all answers Mr. Jens may give at this juncture, nor to rely on Boeing's 30(b)(6) witness to testify about the knowledge of a former employee").

Like Forkner, Jens "has not made the particularized showing the law requires of anyone claiming undue burden." *Papst Licensing GmbH & Co.*, 2017 WL 1233047, at *4. Because his anticipated testimony is relevant and he has not shown he would face an undue burden in sitting for a deposition, the court declines to quash his subpoena. Lead Plaintiff and others in the *Seeks* case must identify various pieces of evidence to prosecute this case, and even a few pieces of the puzzle may be significant in resolving the entirety.

## Conclusion

For the foregoing reasons, Forkner's and Jens's motions to quash their deposition subpoenas are denied.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge

15